## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____ )
CHRISTOPHER COMEAU                          )
d/b/a/ C.J. COMEAU TRUCKING                 )
HIGH ROLLER TRANSPORT LTD                   )
and ROGER COMEAU (sole owner HighRoller),   )
      Plaintiffs,                           )
                                            )
v.                                          )       **CIVIL ACTION**
                                            )       **NO. 11-40208-TSH**
TOWN OF WEBSTER, MASSACHUSETTS,             )
BOARD OF SELECTMEN, BOARD OF  HEALTH,       )
TIMOTHY BENT, POLICE CHIEF,                 )
POLICE DEPARTMENT,  THOMAS PURCELL,         )
HEALTH AGENT and INDIVIDUALLY,              )
      Defendants.                           )
_____ )

## MEMORANDUM OF DECISION AND ORDER ON
## DEFENDANTS' MOTION TO DISMISS
### July 24, 2012

**Hillman, D.J.**

### Nature of the Proceeding

Plaintiffs Christopher Comeau, d/b/a/ Comeau Trucking ("Comeau"), High Roller

Transport LTD ("High Roller"), and Roger Comeau (sole owner of High Roller) ("R. Comeau"),

collectively "Plaintiffs," have brought suit against the Town of Webster, Massachusetts

("Webster"), its Board of Selectmen ("Selectmen"), Board of Health ("Board of Health"), Police

Chief Timothy Bent ("Chief Bent"), Police Department ("Police Department"), and Thomas

Purcell, Individually and as Health Agent ("Purcell").  Defendants have moved to dismiss all

eighteen (18) counts of the First Amended Complaint citing a variety of alleged deficiencies.

(Docket No. 9).  For the reasons set forth below, the motion will be granted in part and denied in part.

## <u>Background</u>[1]

This case stems from a truck crash on Route 395, Webster, Massachusetts.   On July 27, 2008 a tractor trailer owned by Comeau and driven by an employee of High Roller, was carrying over 40,000 lbs of live lobsters and fresh fish.  The truck came over a ridge on Rt. 395 when it came upon a sudden traffic stop that blocked the highway.  The driver could not stop the truck in time, it struck three motor vehicles, and ended up on the highway median.  The truck and trailer were damaged.  Even though Webster had previous experience conducting the marathon and was knowledgeable as to the additional public safety hazards that the marathon created, there were still road closures that caused a backup on to Rt. 395.  No warning signs were posted.

After the crash, the driver checked the product and determined the packing was intact, the icing looked in its original condition, and that the environment was cool.  To protect the load, a replacement refrigerated truck was brought to the scene and the transfer of the seafood product began.  The driver observed each of the first ten lobster crates as they were transferred and that the lobsters were alive and active.

Board of Health Agent Purcell arrived on the scene approximately four hours after the accident, when most of the load had been transferred to the replacement truck.  Purcell did not have experience, training, or other instruction on the proper handling, transportation, storage, or contamination of seafood product, particularly lobsters.  He inspected the seafood to determine whether it was fit for consumption or sale to the public.  Purcell sought no information from the driver and Purcell refused efforts to have a knowledgeable fish company representative inspect the seafood cargo.  Instead, Purcell ordered the load condemned as a risk to public health safety.

[1] The following relevant facts are taken from the First Amended Complaint.

Comeau, High Roller, and R. Comeau have significant expertise in handling, storage, transportation and proper maintenance of seafood products, to ensure that the seafood products are safe for the consuming public when they reach the seafood distributors. This includes the preservation of the product should the refrigerated transportation container become compromised. They have brought suit against Webster and various municipal officials and boards to recover compensatory and punitive damages regarding the condemnation of the seafood.

The complaint (Document No. 11) contains 18 counts, some of which are misnumbered.[2] They are as follows: Count I, negligence against Webster pursuant to Mass. Gen. Laws ch. 258 §§ 1-13; Count II, "common law negligence" against Webster; Count III, violation of Mass. Gen. Laws ch. 85, § 2 against Webster; Count IV (first), negligence against the Board of Selectmen pursuant to Mass. Gen. Laws ch. 258, §§ 1-13; Count IV (second), negligence against the Police Department pursuant to Mass. Gen. Laws ch. 258, §§ 1-13; Count V, negligence against the Selectmen and Chief Bent pursuant to Mass. Gen. Laws ch. 258, §§ 1-13; Count VI (first), negligence against the Board of Health pursuant to Mass. Gen. Laws ch. 258, §§ 1-13; Count VI (second), negligence against Webster pursuant to Mass. Gen. Laws ch. 258, §§ 1-13; Count VII, civil rights violation against the Board of Health pursuant to 42 U.S.C. § 1983; Count VIII, negligent supervision against the Board of Health; Count IX, negligent training by the Board of Health; Count X, civil rights violation against Purcell under 42 U.S.C. § 1983; Count XI, civil rights violation under Mass. Gen. Laws ch. 12, §§ 11H and 11I against Purcell; Count XII , civil rights violation under Mass. Gen. Laws ch. 12, §§ 11H and 11I against the Board of Health; Counts XIII and XIV, interference with a contractual relationship against Purcell; and Counts

---

[2] Defendants removed the case from state court citing diversity of citizenship and questions of federal law.

XV (first) and XV (second), intentional interference in an advantageous relationship against Purcell.

## Standard of Review

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.,* 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999)). To survive a motion to dismiss, the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1950 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1950. "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965-66. Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc., v. Feliciano de Melecio,* 406 F.3d 1, 6 (1st Cir. 2005)). With these principles in mind, I turn to Plaintiffs' claims.

## Discussion

### 1. *Negligence Claims – Counts I, II, IV (first), IV (second), V, VI (first), VI (second), VIII, and IX*

All Plaintiffs' negligence claims are governed by the Massachusetts Tort Claims Act, Mass. Gen. Laws. ch. 258 *et seq.* (the "Act"). The Act is the exclusive remedy for injuries

allegedly caused by the negligent acts or omissions of municipal employees.  Mass. Gen. Laws. ch. 258, § 2.   A plaintiff cannot title a negligence claim under another theory simply to circumvent the requirements of the Act.  *Schenker v. Binns*, 18 Mass. App. Ct. 404, 406 (1984) (citing *Thomas v. Mass. Bay Transit Auth.*, 389 Mass. 408, 410 (1993)).

In their motion, Defendants seek dismissal based on several provisions of the Act, alleging: that Plaintiffs have not complied with the presentment requirements; that the individual defendants are immune from suit for alleged negligent acts committed within the scope of their employment; that the individual defendants were performing discretionary functions and are thus exempt from suit; that claims based upon inspectional services are specifically exempt from suit; and, that the Act provides Defendants with immunity from suit under the public duty rule.

Under Massachusetts law, one who wishes to assert a negligence claim against a municipality must "present[ ] his claim in writing to the [defendant] within two years after the date upon which the cause of action arose."  Mass. Gen. Laws c. 258, § 4.  Suit must be brought within "three years after the date upon which such cause of action accrued," *id.,* and the plaintiff must make the required presentment prior to the commencement of suit.  *Id.*  This statute is written with conspicuous clarity, and the Massachusetts Supreme Judicial Court has left little doubt that its plain meaning controls.  *See Holahan v. Medford,* 394 Mass. 186, 189 (1985). While the presentment requirement is not jurisdictional, it is a statutory condition precedent to bringing suit, *Vasys v. Metro. Dist. Comm'n*, 387 Mass. 51, 55 (1982), and strict compliance with the statute is the rule.  *Gilmore v. Com.*, 417 Mass. 718, 721-722 (1994) (citing *Richardson v. Dailey*, 424 Mass. 258, 261-262 (1997)).

There is much law on how, when, and to whom, proper presentment is to be made.  In the case of a city or town, presentment of a claim will be deemed sufficient if presented to either the

mayor, city manager, town manager, corporation counsel, city solicitor, town counsel, city clerk, town clerk, chairman of the board of selectmen, or executive secretary of the board of selectmen. Mass. Gen. Laws. ch. 258, § 4.  In *Vasys*, the Supreme Judicial Court identified two principal purposes of the presentment requirement, *to wit*: (1) to allow those with valid claims in tort to recover against governmental entities, and (2) to help municipalities screen so that only valid claims be paid.  *Vasys*, 387 Mass. at 57.  Considering these two purposes, courts should aim to strike "[a]n appropriate balance ... between the public interest in fairness to injured persons and in promoting effective government."  *Id*. (quoting *Whitney v. Worcester,* 373 Mass. 208, 216 (1977)).

Defendants' motion, filed in November 2011, sought dismissal of Plaintiffs' negligence claims for their alleged failure to comply with the presentment statue.  Plaintiffs did not file an opposition.  After a hearing on the motion, I requested an affidavit from Plaintiffs' Counsel "setting forth whether or not there was presentment of the Plaintiffs' claims as that term is used in G.L. c. 258, §4.  That affidavit shall set forth in detail the exact nature and date of the communications (with copies)."  On April 2, 2012, Plaintiffs' attorney timely filed an affidavit detailing Plaintiffs' alleged compliance with the presentment requirements.  (Docket No. 16).[3]

Ultimately, the question is whether the presentment letter gives Webster notice of the potential claims by Plaintiffs.  Because the presentment letter here describes with detail the place of the incident and the type of damages incurred, and because the affidavit alleges receipt of the

---

[33] This Court relies on Plaintiffs' affidavit to ascertain whether their claim was "presented" under Mass. Gen. Laws ch. 258, § 4.  While normally, the presence of an affidavit automatically converts a Rule 12(b)(6) motion into a motion for summary judgment,  *Grand Union Co. v. Cord Meyer Dev. Corp.*, 735 F.2d 714, 716-17 (2nd Cir. 1984) (per curiam), the Plaintiffs' affidavit addresses only the limited issue of presentment.  For that reason, I will analyze only the Defendants' presentment argument through the summary judgment prism.  The rest of the claims will be addressed using the Rule 12(b)(6) standard.  Moreover, the affidavit is submitted by Plaintiffs, the non-moving party, so they cannot later complain of an unfair advantage in not receiving advance notice of the conversion of this limited issue into a review under the summary judgment standard.  Defendants argued the presentment issue in their memorandum of law in support of their motion to dismiss.

letter by the Defendants, it is sufficient. *See Lopez v. Lynn Hous. Auth.,* 440 Mass. 1029, 1030 (2003) (plaintiff fulfilled presentment requirement, even though he presented slip and fall claim to public housing authority, rather than housing authority's executive officer, because executive officer's letter to invitee's counsel acknowledged that he had actual notice of claim). Thus, the filing of the affidavit makes Defendants' presentment argument moot, and this Court must address the substance of Plaintiffs' allegations of negligence.

**A.   Negligence Claims against Town of Webster – Counts I, II and VI (second)**

Counts I, II, and VI (second) assert negligence claims against Webster, as opposed to other counts that target town departments or actors. Under Counts I and II, Plaintiffs allege that Webster knew the marathon was happening, knew that it created public safety risks, and failed to warn the driving public of the dangers. The language in Counts I and II is the same, but the counts are styled, respectively, as a violation of Mass. Gen. Laws ch. 258 and as negligence. At the outset, Count II must be dismissed because common law negligence claims cannot be maintained against municipalities. Mass. Gen. Laws ch. 258, § 2.   In Count VI (second), Plaintiffs allege Webster was negligent under Mass. Gen. Laws ch. 258, §§ 1-13 in failing to supervise its employee (Purcell), resulting in damage to Plaintiffs. *Compl.*, ¶¶ 152-159. The question is whether any provisions of chapter 258 provide immunity for the negligence claims in Counts I and VI (second).

Defendants contend they are shielded from liability by Mass. Gen. Laws ch. 258, § 10(b), arguing that their acts were "discretionary." The Act shields a municipality from tort liability for a claim based on the performance, or nonperformance, of a discretionary function or duty on the part of a public employer or public employee, as defined by the statute. *Id.* This

Court looks to state court decisions for assistance in ruling on this state law question. *Chaabouni v. City of Boston*, 133 F. Supp. 2d 93, 96 (D. Mass. 2001).

The first step in deciding whether the discretionary function exception forecloses a plaintiff's claim "is to determine whether the governmental actor had any discretion . . . to do or not to do what the plaintiff claims caused [the] harm." *Harry Stoller & Co. v. Lowell,* 412 Mass. 139, 141 (1992). "[I]f the governmental actor had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, [the] discretionary function exception to governmental liability has no role to play in deciding the case." *Id.* The second, and typically more difficult step in this analysis is to determine whether the discretion that the employee exercised is that kind of discretion for which § 10(b) provides immunity from liability. *Greenwood v. Easton*, 444 Mass. 467, 469-70 (2005). The discretionary function exception is narrow, "providing immunity only for discretionary conduct that involves policy making or planning." *Harry Stoller*, 412 Mass. at 141; *Horta v. Sullivan,* 418 Mass. 615, 621 (1994). "Indeed, we can presume that all governmental employees, in their official duties, act in furtherance of some governmental policy." *Horta*, 418 Mass. at 621 n. 12. When the injury-causing conduct has a "high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability." *Whitney*, 373 Mass. at 218.[4] A court must analyze the specific facts of each case to decide whether discretionary acts involve policy making or planning. *Horta,* 418 Mass. at 621.

In Count I, Plaintiffs contend Webster failed to warn the traveling public about congestion due to the marathon. They claim Webster's negligence regarding highway safety

---

[4] Although the *Whitney* decision issued before enactment of the Act, the "opinion sets forth guiding principles for determining the scope of the discretionary function exception later stated in § 10(b)." *Harry Stoller*, 412 Mass. at 142. Thus, it is proper to look to the *Whitney* court's analysis.

caused the accident.  On the record before this Court, it would be premature to say what traffic

measures were in effect, what Webster knew or should have known about road conditions, etc.,

let alone whether Webster exercised its discretion in a way to be immune under the Act.  *See*

*Harry Stoller*, 412 Mass. at 141.

Likewise, with respect to Count VI (second), Defendants contend Webster has immunity

regarding the decision to condemn the seafood.  Other than arguing that "certainly" the health

agent's exercise of discretion falls under the protection of § 10(b), Defendants offer no precedent

to justify dismissal on such a sparse factual record.  Dismissal under § 10(b) is not warranted.

In the alternative, Defendants argue that the immunity afforded under § 10(f) of the Act

also applies to Webster because it precludes:

> any claim based upon the failure to inspect, or an inadequate or negligent
> inspection, of any property, real or personal, to determine whether the property
> complies with or violates any law, regulation, ordinance or code, or contains a
> hazard to health or safety . . . .

Mass. Gen. Laws. ch. 258, § 10(f).  Normally, a public employer, such as Webster, is not subject

to liability for the adoption of a policy regarding inspections because there is a "high degree of

discretion and judgment involved in weighing alternatives and making choices with respect to

public policy and planning."  *Harry Stoller,* 412 Mass. at 142 (quoting *Whitney*, 373 Mass. at

218).  Plaintiffs allege Webster failed to have proper training and policies in place regarding the

inspection of seafood, and that its employees' failure to follow proper policies and procedures

amounted to negligence.  Such conduct as alleged would fall squarely within the scope of §

10(f); however, there is nothing in the record before this Court regarding what policies and

procedures Webster had in effect.

Lastly, Defendants argue Webster is immune from suit under the statutory public duty

rule.  Mass. Gen. Laws ch. 258, § 10(j).  They contend this section protects towns from liability

for actions that did not "originally cause" a plaintiff's injuries, *id.*, and that Defendants' driver caused the accident, not Webster.  Again, this argument is better suited when a record of the who/what/when regarding the accident is available after discovery.

Once Plaintiffs have developed the factual record and have established the Webster policies that were in effect and the conduct of the different actors, then this Court can assess whether the immunity afforded by exceptions in Mass. Gen. Laws. ch. 258, § 10 apply to bar Plaintiffs' claims.  *Coughlin v. Dep't of Corr.*, 43 Mass. App. Ct. 809, 817 (1997).  It is simply premature to dismiss Plaintiffs' negligence claims against Webster.  <u>Accordingly, dismissal of Counts I, and VI (second) is denied, and dismissal of Count II is granted</u>.

### B.  Negligence Claims against Webster Departments and Employees – Counts IV (first), IV (second), Count V, Count VI (first), Count VIII, and Count IX

In comparison with the negligence claims asserted against Webster, Plaintiffs assert virtually identical negligence claims against the Board of Selectmen (Count IV (first)), Police Department (Count IV (second)), the Board of Selectmen and Chief Bent (Count V), and against the Board of Health (Counts VI (first), VIII, and IX).  The gravamen of Plaintiffs' claims against these different town actors is they were negligent in their official duties, whether it was inspection, training, or highway safety.  Under § 2 of the Act, a "public employee" is not liable for "personal injury or death caused by his negligence or wrongful act or omission while acting within the scope of his office or employment."  Mass. Gen. Laws ch. 258, § 2.  The public employer, however, may be liable for such an injury or death as if it were a private individual, subject to certain limitations.  *Id.*  The Board of Selectmen and Chief Bent are "public employees" under the Act and are exempt from liability for any alleged negligence.  Mass. Gen.

Laws. ch. 258, § 1.[5]  *See also*, *Taplin v. Chatham,* 390 Mass. 1, 2 (1983); *Pruner v. Clerk of the Superior Court in the Cnty of Norfolk,* 382 Mass. 309, 313-315 (1981).  Count IV (first) and Count V must therefore be dismissed.  While the Police Department and the Webster Board of Health are considered "public employers" under the Act,[6] most of the claims against these departments are identical to, and duplicative of, the viable claims already alleged against Webster, *e.g.*, Count I alleges Webster's negligence regarding highway safety, while Count IV (second) mirrors those same allegations, but against Webster's Police Department; and Count VI (second) alleges Webster's negligent supervision and training of Purcell, while Count VIII alleges the Board of Health's negligent supervision of Purcell and Count IX alleges the Board of Health's negligent training of Purcell.  Plaintiffs' Count VI (first) seeks redress for negligent inspection by the Board of Health.  This claim stems from an alleged lack of training that appears in other counts (see *e.g.*, Count VI (second)), but it is also somewhat different in that it seeks damages based on the inspection itself.  Plaintiffs' cause of action is against the "public employer," Mass. Gen. Laws ch. 258, § 1, which is *either* Webster *or* its departments.  Plaintiffs are not entitled to assert the same claims against Webster *and* its departments.  As soon as possible, Plaintiffs are encouraged to pare down their claims by voluntarily dismissing them.  At this stage though, Plaintiffs' negligence claims against the Police Department and the Board of Health remain viable.

---

[5] Massachusetts Gen. Laws ch. 258, § 1, defines "public employee" as "elected or appointed, officers or employees of any public employer, whether serving full or part-time, temporary or permanent, compensated or uncompensated, and officers or soldiers of the military forces of the commonwealth."

[6] A "public employer" is "any county, city, town, educational collaborative, or district, . . . and any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof . . . ."  Mass. Gen. Laws ch. 258, § 1.

Consequently, Count IV (first) and Count V are dismissed. The motion to dismiss should be denied as to Count IV (second), Count VI (first), Count VIII, and Count IX.

### 2. *Alleged violation of Mass. Gen. Laws. ch. 85, § 2 – Count III*

Count III alleges that Webster created a safety hazard by not properly detouring marathon traffic within the town, thereby creating the backup on Route 395. Plaintiffs claim that Mass. Gen. Laws. ch. 85, § 2 imposes a duty on Webster to keep their roadways properly maintained and that duty included Webster implementing appropriate traffic controls to mitigate the marathon traffic. Defendants' argument is that chapter 85 applies to state roadways as opposed to local roadways and imposes a duty upon the Commonwealth's highway department as opposed to the Webster's. Defendants are correct. The duty that is created by § 2 is a duty on the Commonwealth. General Laws c. 85, § 2. *See Twomey v. Com.*, 444 Mass. 58, 61 (2005). Section 2 does not apply to municipalities.

There is a separate statutory scheme found in chapter 84 for the repair and maintenance of *municipal* ways and bridges. General Laws ch. 84, § 15 provides the sole remedy against a *municipality* for personal injuries or property damage resulting from a defect or want of repair "in or upon a way." *See Huff v. Holyoke,* 386 Mass. 582, 585 (1982); *Gallant v. Worcester,* 383 Mass. 707, 711-12 (1981); *Whalen v. Worcester Elec. Light Co.,* 307 Mass. 169, 174-75 (1940). Plaintiffs allege that "*Webster* had a duty pursuant to M.G.L. C. 85 §2 to take steps to insure that the roadways were properly maintained." (emphasis added) (*Compl.*, ¶ 84). Plaintiffs may have cited to the wrong statute. Plaintiffs' counsel may seek leave to amend the complaint to correct that error. Whether the court would allow such an amendment is for another day. Amendments correcting jurisdictional allegations are specifically authorized by 28 U.S.C.A. § 1653, which

provides that defective allegations of jurisdiction may be amended in the trial or appellate courts. Accordingly, Count III is dismissed.

### 3. The Federal Civil Rights Claims – Counts VII and X

Plaintiffs allege civil rights violations in contravention of 42 U.S.C. § 1983 against the Board of Health (Count VII) and its agent Purcell (Count X).  To establish a claim under § 1983, a plaintiff must show he was "deprived of a right, immunity, or privilege secured by the constitution or laws of the United States by a person acting under color of state law."  *Pittsley v. Warish*, 927 F.2d 3, 6 (1st Cir. 1991).

### A.  Count VII:  42 U.S.C. § 1983 Claims Against the Board of Health

To establish municipal liability, a plaintiff must show that "the municipality itself causes the constitutional violation at issue.  *Respondeat superior* or vicarious liability will not attach under § 1983."  *City of Canton  v. Harris*, 489 U.S. 378, 387 (1989).  *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).  A municipality can be said to have caused a violation where there is both the existence of a policy or custom, and a "direct causal link" between that policy and the alleged constitutional deprivation.  *Harris*, 489 U.S. at 385; *Monell*, 436 U.S. at 694 (policy must be the "moving force [behind] the constitutional violation"); *Santiago v. Fenton*, 891 F.2d at 373, 381–82 (1st Cir. 1989).  Such custom "must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice."  *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, —— U.S. ——, ——, 131 S.Ct. 1350, 1359 (2011).

Here, to survive the motion to dismiss, Plaintiffs must have pled facts to show it is plausible that the Board of Health adopted and implemented spoilage/storage/contamination policies, not for the purpose of a neutral health and safety reason, but for the purpose of violating Plaintiffs' civil rights. *See e.g.*, *Iqbal*, 556 U.S. at 677, 129 S.Ct. at 1949 (where the Court dismissed § 1983 claims because the complaint did not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind).

In support of their § 1983 claim, Plaintiffs merely contend Webster's Board of Health: (1) "has a duty and an obligation of reasonable care to administer, properly supervise, direct, and control those agents acting on its behalf . . . ," *Compl.*, ¶ 161; and (2) had policies and customs in place for the purpose, including but not limited to administering, directing, supervising and controlling inspection and disposition of food products." *Id.*, ¶ 163. None of Plaintiffs' allegations identify a policy that caused a violation of their right to due process. Instead, Plaintiffs attempt to implicate the town by parroting the elements of a § 1983 claim. On such meager allegations, Plaintiffs' claim for municipal liability cannot succeed. *See Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-65 (dismissal of complaint is warranted when complaint contains only threadbare recitals of the elements of a cause of action, supported by mere conclusory statements). To survive a motion to dismiss, a complaint need not have detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). *See also*, 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004) ("[T]he pleading must contain something more . . .

than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

Plaintiffs' formulaic allegation that the Board of Health "had policies and customs in place" is precisely the type of blanket, conclusory allegation that the Supreme Court has determined should not be given credit when standing alone. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-65; *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. <u>Accordingly, Count VII against Webster's Board of Health must be dismissed</u>.

### B.  Count X:  42 U.S.C. § 1983 Claims Against Purcell

The gravamen of Plaintiffs' § 1983 claim is that Purcell caused them "to lose property and suffer damages without due process or in violation of the law." *Compl.*, ¶ 190.  "Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law." *Evans v. Avery,* 100 F.3d 1033, 1036 (1st Cir.1996).  Plaintiffs have satisfied the first condition of a § 1983 claim -- that the act in question occur "under color of state law" -- by alleging Purcell, who is Webster's Health Agent, harmed them through his acts.  Plaintiffs must also identify a protected property or liberty interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701 (1972).  To establish a constitutionally protected property interest, a plaintiff "must have more than an abstract need or desire for [a thing] . . . [and] more than a unilateral expectation of it." *Id*.  Instead, a plaintiff instead must "have a legitimate claim of entitlement to it." *Id.*  Although the complaint does not identify a specific property interest, it appears Plaintiffs may have a plausible claim to the seafood and truck to establish the required entitlement to their property that they lost allegedly due to Defendants' acts.  However, the inquiry does not end here.  Defendant Purcell seeks cover under the doctrine of qualified immunity.

Qualified immunity shields public officials from suit, and is not a mere defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806 (1985). It is therefore important for the immunity question to be resolved at the earliest possible stage in litigation. *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534 (1991); *Mitchell,* 472 U.S. at 527-29, 105 S.Ct. at 2816-818 (immunity ordinarily should be decided by the court long before trial). "The basic thrust of the qualified immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.' " *Iqbal,* 556 U.S. at 685, 129 S.Ct. at 1953 (quoting *Siegert v. Gilley,* 500 U.S. 226, 236, 111 S.Ct. 1789 (1991) (Kennedy, J., concurring in judgment)).

Qualified immunity is a doctrine that "balances two important interests -- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009). Its protection applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez,* 540 U.S. 551, 567, 124 S.Ct. 1284 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894 (1978), for the proposition qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

Following *Pearson*, the First Circuit abandoned its former three-part qualified immunity analysis and adopted a two-part test. *See Maldonado v. Fontanes,* 568 F.3d 263, 269 (1st Cir. 2009). The relevant inquiry is: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.* Moreover, the second part of the test requires

facts showing it was "sufficiently clear" that a reasonable defendant-official would know he was violating a constitutionally protected right, and that he knew his conduct violated the plaintiff's constitutional rights. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034 (1987). "That is, the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Maldonado*, 568 F.3d at 269, and cases cited. This Court may exercise discretion in deciding which of the two prongs of the test should be addressed first. *Pearson*, 555 U.S. at 236, 129 S.Ct. at 818.

Based on the complaint, Plaintiffs have alleged, among other things, that Webster had "policies, rules regulations [sic], statutes, and customs in place" regarding the inspection and disposition of food products, and that Purcell with "intentional or reckless disregard for the consequences failed to properly administer, supervise, direct and control the inspection and disposition of the seafood cargo." *Compl.*, ¶ 188. At this stage of the proceedings, the policies, if any, that were in place in Webster are unknown. It is simply premature to say that Purcell's acts did not cause a violation of Plaintiffs' constitutional rights. It is plausible that Purcell intentionally, or recklessly, or in bad faith, disregarded a policy regarding the condemnation of perishable food. Likewise, it may be that Purcell performed his duties reasonably and is granted qualified immunity. Defendants may, of course, reassert the defense of qualified immunity at summary judgment on a more fully developed record. *See Sanchez v. Pereira-Castillo*, 590 F.3d 31, 52 n. 15 (1st Cir. 2009).

Lastly, Plaintiffs are reminded that for their § 1983 claim against Purcell to succeed, they most show his conduct "shocks the conscience." *Schiller v. Strangis*, 540 F. Supp. 605, 616 (D. Mass. 1982). Accordingly, the motion to dismiss Count X against Purcell is denied.

### 4. *Claims under Massachusetts Civil Rights Act – Counts XI, XII*

Under Count XI (v. Purcell) and Count XII (Board of Health), Plaintiffs pursue redress for alleged state civil rights violations. Plaintiffs argue Defendants' actions regarding the accident were "unlawful" and caused a loss of rights through "interference by threats, intimidation or coercion." *Compl.*, ¶¶ 198, 206.

The Massachusetts Civil Rights Act provides a right of action to any person whose exercise or enjoyment of rights secured by the federal or state constitution or laws has been interfered with by "threats, intimidation or coercion." Mass. G.L c. 12, § 11I. A threat "involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm"; intimidation "involves putting in fear for the purposes of compelling or deterring conduct"; and coercion means "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. 467, 474 (1994).

The MCRA contemplates a two-part sequence: liability may be found where (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that he has the constitutional right to do. *Goddard v. Kelley,* 629 F. Supp. 2d 115, 128 (D. Mass. 2009). The element of "threats, intimidation, or coercion" must be separately present in addition to the violation of rights. *See Sarvis v. Boston Safe Deposit and Trust Co.,* 47 Mass. App. Ct. 86, 93 (1999).

Again, as discussed in the § 1983 discussion above, Plaintiffs' allegations in Counts XI and XII show Plaintiffs understand the "magic" language required by the statute (*i.e.*, asserting threats, intimidation, or coercion); however, Plaintiffs need to do more than parrot the standard to prevent dismissal of their state civil rights claims. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-65; *Papasan*, 478 U.S. at 286, 106 S.Ct. at 2944. Because Plaintiffs merely set forth a

formulaic recitation of the elements of the cause of action, dismissal of their state civil rights claims is warranted.  <u>Accordingly, Count XI and Count XII are dismissed.</u>

### 5.   *Intentional Torts - Counts XIII, XIV, XV (first), XV (second)*

In Count XIII, Plaintiff Comeau alleges intentional interference with contractual relations against Purcell,[7] and in Count XIV Plaintiffs High Roller and R. Comeau mirror those claims against Purcell.  Although similar, the allegations against Purcell in Count XV (first) by Comeau, and in Count XV (second) by High Roller and R. Comeau, are for the tort of intentional interference with an advantageous business relationship.

The Restatement (Second) of Torts represents the law of Massachusetts with regard to a claim of intentional interference with contractual relations.  *Gouin v. Gouin*, 249 F. Supp. 2d 62, 74 (D. Mass. 2003) (citing *Shafir v. Steele*, 431 Mass. 365, 369 n.7 (2000)).  That rule states:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing  the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

*Restatement (Second) of Torts*, § 766.  To state such a claim, Plaintiffs must allege four elements: "(1) the existence of a contract or a business relationship with contemplated economic benefit; (2) the defendant's knowledge of the contract or business relationship; (3) the defendant's intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages." *Swanset Dev. Corp. v. Taunton,* 423 Mass. 390, 397 (1996).

In slight contrast, claims for intentional interference with advantageous business relations require proof that the plaintiff had an advantageous business relationship with a third party, the defendant knowingly induced a breaking of the relationship, and the defendant's interference was

---

[7] In paragraph 208 of the First Amended Complaint, Plaintiffs' Counsel names both Comeau and High Roller as the aggrieved parties; but, from the allegations it is clear that only Comeau seeks relief under Count XIII.

improper in motive or means, causing the plaintiff harm. *Anzalone v. Admin. Office of the Trial Ct.,* 457 Mass. 647, 660 (2010); *Blackstone v. Cashman,* 448 Mass. 255, 260 (2007).

Thus, the notable difference between the two torts is the existence of a contract. To recover for interference with advantageous business relations, the plaintiff need not prove a binding contract, but he must show a probable future business relationship from which there is a reasonable expectancy of financial benefit. *Owen v. Williams,* 322 Mass. 356, 361–62 (1948); *Goldhor v. Hampshire Coll.,* 25 Mass. App. Ct. 716, 725 (1988); *Powers v. Leno,* 24 Mass. App. Ct. 381, 385 (1987).

The improper motive required by the torts is actual malice: "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." *Wright v. Shriners Hospital for Crippled Children,* 412 Mass. 469, 476 (1992) (quoting *Sereni v. Star Sportswear Mfg. Corp.,* 24 Mass. App. Ct. 428, 433 (1987)). Neither personal or financial gain, nor personal dislike, is enough to satisfy the improper motive requirement. *King v. Driscoll,* 418 Mass. 576, 587 (1994). "Generally, the propriety of the [defendant's] motives in a particular setting necessarily depends on the attending circumstances, and must be evaluated on a case-by-case basis." *Adcom Prod., Inc. v. Konica Bus. Mach. USA, Inc.,* 41 Mass. App. Ct. 101, 105 (1996).

As a threshold issue, Defendants maintain that Purcell was acting in his official capacity and therefore cannot be liable for intentional torts. Mass. Gen. Laws ch. 258, § 10(c); *Saxonis v. Lynn,* 62 Mass.App.Ct. 916, 918 (2004) (public employee sued in official capacity for intentional tort immune under G.L. c. 258, § 10(c)), *review denied*, 443 Mass. 1104 (2005), *cert. denied*, 546 U.S. 819 (2005); *Howcroft v. Peabody,* 51 Mass.App.Ct. 573, 596 (2001) (affirming dismissal, under G.L. c. 258, § 10(c), of intentional infliction of emotional distress claim against public employee sued in official capacity). There is some confusion about Purcell's status created by

the complaint. The caption names "Thomas Purcell, Health Agent & Individually;" but, a review of the allegations shows all the actions Purcell was alleged to have undertaken occurred while he was performing his duties *for Webster*. Plaintiffs cannot impose individual liability on Purcell without saying how he acted beyond the scope of his duties. To survive dismissal, a plaintiff must allege acts outside the scope of the officer's authority, or that he acted in bad faith or with malice or corruption. *Gildea v. Ellershaw,* 363 Mass. 800, 820-21 (1973). To determine whether a defendant's acts fall within the purview of section 10(c), the finder of fact must consider whether the conduct complained of is of the kind the employee is hired to perform, whether it occurs within authorized time and space limits, and whether "it is motivated, at least in part, by a purpose to serve the employer." *Wang Labs., Inc. v. Bus. Incentives, Inc.,* 398 Mass. 854, 859 (1986); *Pinshaw v. Metropolitan Dist. Commn.,* 402 Mass. 687, 694 (1988), citing *Howard v. Burlington,* 399 Mass. 585, 590 (1987); *Canty v. Old Rochester Reg'l Sch. Dist.*, 54 F. Supp. 2d 66, 71 (D. Mass. 1999). "If an employee "acts from purely personal motives . . . in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment," and immunity is not available. *Miller v. Federated Dept. Stores, Inc.,* 364 Mass. 340, 348 (1973); *Canty,* 54 F. Supp. 2d at 71.

The complaint alleges that Purcell "unlawfully, maliciously, and without justification, intended to interfere with and cause a breach of [Plaintiffs'] contract relationship with the seafood distributors including … intentionally condemning the cargo of seafood." *Compl.*, ¶¶ 212, 220. The Complaint further alleges Purcell "intended to destroy or impair, and has destroyed or impaired, [Plaintiffs'] advantageous relationship with the Seafood distributors with whom Comeau has a business and professional relationship . . . ." *Id.*, ¶¶ 230, 241.

Construed in the light most favorable to Plaintiffs, none of those allegations reflect how Purcell acted with purely personal motives, or that his acts were disconnected with Webster's interests. As a matter of law, Plaintiffs have failed to allege sufficient facts to bring their claims outside the umbrella of immunity provided by Mass. Gen. Laws ch. 258, § 10(c) for employees acting in their official capacity.

Even so, these counts, like many of the others discussed above, contain no more than conclusions of law without the factual allegations to support such claims. For example, Plaintiffs fail to allege Purcell knew of any contractual relationship between Plaintiffs and seafood distributors (the second, necessary, element to a claim for intentional interference with contractual relations); and, Plaintiffs fail to allege an improper purpose or means by Purcell in his decision to condemn the seafood (the third, necessary, element for a claim). Similarly, Plaintiffs fail to support their claims for interference with advantageous business relations with any factual allegations that Purcell knew of any business relationships, or that he purposefully interfered with those relationships, when he condemned the seafood. Without facts to bolster their formulaic allegations, Plaintiffs' interference claims must be dismissed. *See*, *Anzalone*, 457 Mass. at 661 (dismissal of interference claim warranted where plaintiff merely exercised talismanic invocation in the complaint of "wrongful interference" or "unjust" behavior). Accordingly, the motion to dismiss Counts XIII, XIV, XV (first), XV (second) is granted.

*Conclusion*

For the foregoing reasons, the following order enters regarding Defandants' Motion to Dismiss (Docket No. 9):

The Motion to Dismiss is **DENIED as to Counts I, IV (second), VI (first), VI (second), VIII, IX and X**.

The Motion to Dismiss is **GRANTED as to Counts II, III, IV (first), V, VII, XI, XII, XIII, XIV, XV (first), and XV (second)**.

/s/ Timothy S. Hillman_____
TIMOTHY S. HILLMAN
U.S. DISTRICT JUDGE