UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHRISTOPHER COMEAU <br> d/b/a/ C.J. COMEAU TRUCKING <br> HIGH ROLLER TRANSPORT LTD <br> and ROGER COMEAU (sole owner HighRoller), <br>     Plaintiffs, <br><br> v. <br><br> TOWN OF WEBSTER, MASSACHUSETTS, <br> BOARD OF SELECTMEN, BOARD OF HEALTH, <br> TIMOTHY BENT, POLICE CHIEF, <br> POLICE DEPARTMENT, THOMAS PURCELL, <br> HEALTH AGENT and INDIVIDUALLY, <br>     Defendants, <br><br> v. <br><br> ROBERT J. MOSCOFFIAN and <br> ARNOLD A. VILLATICO, JR. <br>     Third Party Defendants/ <br>     Plaintiffs in Counterclaim | CIVIL ACTION <br> NO. 11-40208-TSH |

**MEMORANDUM OF DECISION AND ORDER ON
DEFENDANTS TOWN OF WEBSTER, BOARD OF HEALTH AND THOMAS
PURCELL'S MOTION FOR SUMMARY JUDGMENT (Docket No. 55)
ON THE PLAINTIFF'S AMENDED COMPLAINT**
March 31, 2014

**HILLMAN, D.J.**

### Introduction

Plaintiffs Christopher Comeau, d/b/a/ Comeau Trucking, High Roller Transport LTD and

Roger Comeau, (collectively "Plaintiffs") have brought suit against the Town of Webster,

Massachusetts, its Board of Selectmen, Board of Health, Police Chief Timothy Bent, Police

Department, and Thomas Purcell, Individually and as Health Agent ("Purcell") (collectively "Defendants").  This case stems from a multi-vehicle accident on Route 395 in Webster, Massachusetts, on July 27, 2008. A tractor trailer owned by Comeau Trucking, and driven by an employee of High Roller, was carrying a load of fresh fish and live lobsters.  As a result of the accident, the trailer opened up and the seafood spilled onto the roadway. The load of seafood was condemned by Thomas Purcell, the Town of Webster's Health Agent.

On July 26, 2011, the Plaintiffs filed the within action and amended their Complaint on October 20, 2011. The First Amended Complaint was the subject of a motion to dismiss brought by the defendants, which I allowed in part and denied in part (Docket No. 17). The Defendants then answered the remaining counts and brought a Third Party Complaint against defendants Robert Moscoffian, who operated the tow truck that arrived at the accident scene, and Arnold Villatico, a local restaurant owner who was called to the scene by Moscoffian, for conversion of the seafood. Moscoffian and Villatico then asserted counterclaims of sounding in negligence against the Town of Webster's Health Department and civil rights violations against Thomas Purcell, all of which were the subject of a Motion to Dismiss filed by the Defenants and all of which were ultimately dismissed.

For the reasons set forth below, Defendants' motion for summary judgment as to all remaining Counts of the Plaintiffs' Amended Complaint is granted..

**Background**

On July 27, 2008, the plaintiff, Christopher Comeau d/b/a C.J. Comeau Trucking was transporting a load of lobster and other seafood in a refrigerated truck on behalf of High Roller. Transport ("High Roller") is a transport company from Nova Scotia. It transports mainly seafood from Nova Scotia to New York, New Jersey and Connecticut.

According to Roger Comeau, the customers to whom High Roller is delivering, not High Roller or Comeau Trucking, own the seafood.

Michael Randall, an employee of Comeau, was driving the vehicle. Early on Sunday morning, July 27, 2008, the truck was operating on Interstate 395 in the Oxford-Webster area when it came upon a backup of traffic near Exit 2. Unable to stop for the backup, it collided with three other motor vehicles and ultimately crashed into the rock outcropping on the left side of the highway (herein referred to as "the accident"). As a result of the accident, the left front corner of the refrigeration ("reefer") unit split open, spilling approximately 1,000 lbs or more of dry fish onto the ground. *See Motion for Leave to File by Thomas Purcell, Town of Webster, Town of Webster Board of Health*, Attachments 1 & 2, Exhibit F - color photographs produced by the State Police (Docket No. 57). The fuel tank also ruptured and an unknown amount of fuel spilled from the truck.

After the accident, the refrigeration unit on the truck was not working. Randall informed Roger Comeau of the accident and that he had not looked at the cargo. Mr. Comeau told Mr. Randall, not to inspect the cargo and to keep the door to the reefer unit closed to try and maintain the temperature inside the unit.[1] Shortly after the accident, Mascoffian Towing Company was contacted by the Massachusetts State Police to assist in the towing of the damaged vehicles. Robert Mascoffian, the owner of Mascoffian Towing, arrived at the scene of the accident at approximately 6:45am. Upon arrival, Mascoffian and his employees waited several hours for the Sturbridge State Police to complete their accident reconstruction before they were allowed to begin their recovery of the vehicles involved in the accident. The Comeau truck was not running when Mr. Mascoffian arrived.

---

[1] While the plaintiffs maintain that the truck, after the accident, remained on all 18 wheels positioned at an upright angle with the seafood cargo essentially plugging the hole and allowing the interior of the unit to remain cold, the photographs provided by the State Police suggest otherwise.

While waiting for the State Police to complete their accident reconstruction, Mascoffian spoke to Randall about the seafood cargo in the reefer unit and the two determined that they should secure a working reefer unit to transfer the cargo. Within an hour of this conversation, a new reefer truck arrived on scene. The men then waited while the State Police finished their accident reconstruction and waited for the new reefer truck to reach a temperature of 45 degrees. From the time that Mascoffian arrived on scene at 6:45am until the new reefer truck got to the correct temperature, no one inspected the seafood cargo. Once it had reached 45 degrees, it took the men a couple of hours to transfer the lobsters to the new unit.

While they were transferring the load, Thomas Purcell, the Board of Health Agent for the Town of Webster, appeared at the scene. Mr. Purcell arrived at the scene at approximately 11:30am. Upon arrival, Mr. Purcell observed the Comeau truck's reefer unit laying on its side against the outcropping. He noticed a fuel spill in close proximity to the vehicle and noted that the fuel tank of the vehicle had been damaged. He also noticed that the front left side of the reefer unit had been split open and part of the truck's cargo had spilled out the side, Mr. Purcell observed the boxes of salt fish possibly contaminated by fuel.

Mr. Purcell spoke with the police department and fire department, and learned that the Comeau vehicle had not been running since the time of the accident, more than four hours before. Purcell knew from his experience that any food product that required refrigeration that had been without refrigeration for four hours should be condemned. Further, in order to properly salvage the load, the temperatures of the cargo should been taken every hour after the accident. Because the fuel tank had been ripped open, Purcell knew that the temperature controls inside the reefer unit were not working. Purcell also was told that no one had physically checked the

temperature of the cargo hourly. Mr. Purcell made the decision to condemn the load and informed Mr. Mascoffian of the same. Mr. Purcell was never contacted by Roger Comeau. Mr. Randall was cited by the State Police for the accident for failure to use care in stopping and following too closely, although both charges were later dismissed in a court proceeding.

On or about July 26, 2011 the plaintiffs filed the within action and on October 20, 2011 the plaintiffs Amended their Complaint. With respect to their allegations against the Town and against Mr. Purcell, Plaintiffs maintain that the Town and/or the Police Department should have warned the public that traffic might back up on Interstate 395. They also maintain that Purcell was arbitrary in his decision to condemn the seafood cargo. Roger Comeau maintains that his damages are for the loss of the cargo which he acknowledged that he does not own. Roger Comeau admitted that the insurance company for CJ Comeau Trucking paid his customers for the loss of their seafood, for which they executed releases. Christopher Comeau acknowledged that his insurance company paid him for the loss of his truck, for which he signed a release.

## **Discussion**

Summary judgment is appropriate when there is no genuine issue as to any material fact and thus the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994). The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1968). It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's

case.'" *Rakes v. U.S.,* 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 4). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex,* 477 U.S. at 325). When ruling on a motion for summary judgment, the court must construe the facts in the light most favorable to the non-moving party. *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003).

If the moving party meets its initial burden, the burden shifts to the non-moving party, which must go beyond the pleadings and submit admissible evidence supporting its claims or defenses and showing a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Nissan Fire,* 210 F.3d at 1103; *Devereaux,* 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex,* 477 U.S. at 323. In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Defendants maintain that there is no genuine issue of material fact and that summary judgment must enter in favor of the defendants as a matter of law on all remaining Counts. Defendants maintain that defendant Purcell's conduct in condemning the seafood load was a discretionary function for which Purcell and the Town are immune in accordance with G.L. c. 258. Defendants also contend that there is no evidence to suggest that the Town of Webster was responsible for, or should have put up warning signs on a state highway, Interstate 395, to warn of a potential back up or slowdown of traffic.

Plaintiffs contends that the Town and its police department have no immunity based on the provisions of G.L. c. 258 and Thomas Purcell's actions in condemning the load of seafood

were not discretionary, and instead acted in an arbitrary and capricious manner in violation of the property rights of Roger Comeau and High Roller. Plaintiffs further argue that the Town of Webster Health Department failed to provide Purcell with proper training.

*Massachusetts Tort Claims Act -- Mass. Gen. .Laws c. 258*

Defendants contend they are shielded from liability by Mass. Gen. Laws. ch. 258, § 10(b), arguing that their acts were "discretionary." The Act shields a municipality from tort liability for a claim based on the performance, or nonperformance, of a discretionary function or duty on the part of a public employer or public employee, as defined by the statute. *Id*. This Court looks to state court decisions for assistance in ruling on this state law question. *Chaabouni v. City of Boston*, 133 F. Supp. 2d 93, 96 (D. Mass. 2001).

The first step in deciding whether the discretionary function exception forecloses a plaintiff's claim "is to determine whether the governmental actor had any discretion . . . to do or not to do what the plaintiff claims caused [the] harm." *Harry Stoller & Co. v. Lowell,* 412 Mass. 139, 141 (1992). "[I]f the governmental actor had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, [the] discretionary function exception to governmental liability has no role to play in deciding the case." *Id.* The second, and typically more difficult step in this analysis is to determine whether the discretion that the employee exercised is that kind of discretion for which § 10(b) provides immunity from liability. *Greenwood v. Easton*, 444 Mass. 467, 469-70 (2005). The discretionary function exception is narrow, "providing immunity only for discretionary conduct that involves policy making or planning." *Harry Stoller*, 412 Mass. at 141; *Horta v. Sullivan,* 418 Mass. 615, 621 (1994). "Indeed, we can presume that all governmental employees, in their official duties, act in furtherance of some governmental policy." *Horta*, 418 Mass. at 621 n. 12. When the injury-

7

causing conduct has a "high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability." *Whitney*, 373 Mass. at 218.[2] A court must analyze the specific facts of each case to decide whether discretionary acts involve policy making or planning. *Horta,* 418 Mass. at 621.

*Count I (v. Town of Webster) and Count IV (second) ( v. Webster Police Department) for Negligence – Highway Safety*

Plaintiff has brought claims for negligence against the Town of Webster (Count I) and its Police Department (Count IV) (second) for failing to warn the traveling public about congestion due to the marathon.[3] They claim Defendants' negligence regarding highway safety caused the accident. Defendants maintain these claims are barred by section 10(j) of the Massachusetts Tort Claims Act ("MTCA"). The MTCA provides that "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." M.G.L. ch. 258, §2. Section 10(j) of the MTCA states that a public employer cannot be liable for:

> any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.

M.G.L. c. 258 §10(j).

---

[2] Although the *Whitney* decision issued before enactment of the Act, the "opinion sets forth guiding principles for determining the scope of the discretionary function exception later stated in § 10(b)." *Harry Stoller*, 412 Mass. at 142. Thus, it is proper to look to the *Whitney* court's analysis.
[3] In this Court's Order on defendants' Motion to Dismiss (Docket No. 17), I requested that the Plaintiffs amend its confusing complaint by voluntarily dismissing some of the duplicative claims and allegations, which has not been done. Order, p. 12.

Defendants argue that since Plaintiffs' state law claims seek to hold Webster and the Police Department responsible for failing to prevent the traffic congestion that allegedly caused the accident, rather than for being the original cause, that §10(j) applies in this case. Section 10(j) "was intended to provide some substantial measure of immunity from tort liability to government employers." *Brum v. Town of Dartmouth*, 428 Mass. 684, 695 (1999). Section 10(j) provides immunity "in respect to all consequences except where the condition or situation was originally caused by the public employer." *Id*. at 692.

While the Plaintiffs continued to assert the same claims against the Town and its Departments, in the end, it matters not. Here, neither the Town of Webster nor members of its Police Department were the original cause of the extra people and traffic in town for the race that day, but allegedly failed to provide adequate safety precautions or anticipate other planning options which may have prevented the traffic backup and, possibly, the accident that caused the seafood cargo spill. This neglect of duty is a "failure to act to prevent or diminish" that excludes liability under 10(j). *Id*. at 693. Plaintiffs contend that if section 10(j) does apply, then Webster should be still held liable under either of the two exceptions to section 10(j). Those exceptions state that section 10(j) shall not apply to

> any claim based upon explicit and specific assurances of safety or assistance, beyond general representations that investigation or assistance will be or has been undertaken, made to the direct victim or a member of his family or household by a public employee, provided that the injury resulted in part from reliance on those assurances

or to "any claim based upon the intervention of a public employee which causes injury to the victim or places the victim in a worse position than he was in before the intervention." G.L. c. 258 s. 10(j)(1)-(2). The phrase "explicit and specific assurances" "requires 'a spoken or written assurance, not one implied from the conduct of the parties or the situation,' and the 'terms of the

9

assurance must be definite, fixed, and free from ambiguity.'" *Ariel v. Town of Kingston*, 69 Mass. App. Ct. 290, 293, (2007) (quoting *Lawrence v. Cambridge*, 422 Mass. 406, 410 (1996)). Here, there is no evidence of such specific or explicit assurances, nor reliance on any assurances, making the exception found in section 10(j)(1) inapplicable. Plaintiffs has not shown any intervention by Defendants which placed Comeau or High Roller in a worse position; rather, Plaintiffs claims are based on Defendants' failure to intervene. Defendants are therefore immune from the state law claims (Counts I and IV (second)) under M.G.L. c. 258 §10(j).

*Count VI (first) (v. Webster Heath Dept. for Negligent Inspection of Seafood Cargo), Count VIII (v. Webster Health Dept for Negligent Supervision), Count IX (v. Webster Health Dept. for Negligent Training) and Count VI (second) (v. Town of Webster for Negligent Inspection of the Seafood Cargo)*

Defendants contend that the allegations of negligence against the Webster and its Board of Health regarding the supervision and training of Mr. Purcell which lead to the and negligent inspection of the seafood cargo should be dismissed because under section 10(j) because municipalities are not liable for claims based on negligence in failing to adequately train or supervise its employees.

Section 10(j) bars such claims based upon a failure to train or supervise because "they are all claims based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance." *Eason v. City of Boston, 09-112278-NMG (D.Mass. 2010)* (Bowler, MJ) at 6–7, (quoting *Ward v. City of Boston,* 367 F.Supp. 2d 7, 16 ( D. Mass. 2005) (Dein, M.J.)). To be an "original cause" within the meaning of Section 10(j), there must be "an affirmative act (not a failure to act) by a public employer that creates the 'condition or situation' that results in harm inflicted by a third party." *Ward,* 367 F.Supp. 2d at 14 (quoting *Kent v. Commonwealth,* 437 Mass. 312, 317 (2002)). Claims of failure to train or supervise "are all claims based on the failure to prevent or mitigate a harm, rather than participation in the initial

10

injury causing experience" and are thus barred by §10(j). *Ward*, 367 F.Supp. 2d at 16, quoting *Armstrong v. Lamy*, 938 F. Supp1018, 1044 (D.Mass. 1996).

Plaintiffs have not shown any facts which would support a theory of Webster or its Board of Health participating in any injury causing behavior other than a generalized statement vis-à-vis a failure to train or supervise Mr. Purcell in the inspection of seafood. Accordingly, summary judgment as to the negligent failure to train or supervise claims in Counts VI (first), VI (second), VIII and IX is granted. e.g., *Ward v. City of Boston*, 367 F.Supp.2d at 16 (holding claims of failure to train or supervise were barred by section 10(j) because they were "based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance"); *Doe v. D'Agostino*, 367 F.Supp.2d at 177 (holding failure to supervise claim was barred because it was "based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance.

*Count X (v. Thomas Purcell for Civil Rights Violations)*

The basis for Plaintiffs' civil rights claims against Mr. Purcell appears to be the loss of the condemned seafood following the accident, in violation of 42 U.S.C. § 1983. Although this theory of recovery is still unclear despite complete and thorough discovery, Mr. Purcell is nonetheless entitled to qualified immunity as the due process claims asserted by the Plaintiffs as discussed below.

The qualified immunity of government officials is a shield against unwarranted charges that the official violated the Constitution in the course of performing the functions of the office. In *Jordan v. Carter,* 428 F.3d 67, 71 (1st Cir .2005), the First Circuit explained that "[i]n deference to the sensitive discretionary judgments that government officials are obliged to make,

qualified immunity safeguards even unconstitutional conduct if a reasonable officer at the time and under the circumstances surrounding the action could have viewed it as lawful."

To allow summary judgment based on Mr. Purcell's qualified immunity, there must be no reasonable basis on which Plaintiffs could establish the requisite criteria of § 1983 where: (1) a constitutional right was violated; (2) the right was clearly established at the time of the challenged conduct; and (3) a reasonable official would have understood that the challenged conduct violated that established right. *Jordan v. Carter,* 428 F.3d at 71–72. *See generally Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 82 (1984); *Duriex–Gauthier v. Lopez–Nieves,* 274 F.3d 4, 9 (1st Cir.2001). Mr. Purcell argues that these criteria were not met.

While the summary judgment record suggests that the property interest of the seafood cargo was not Defendants to claim, it was certainly not clearly established at the time Mr. Purcell entered the accident scene and, with the health interests of the general public in mind, condemned a load of spilled seafood cargo on a hot summer day. Any reasonable official would not have understood that such conduct would be in violation of someone's constitutional right, and the record reflects that Mr. Purcell did not understand as such. Further, Substantive due process is said to "protect individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions." *Pagán v. Calderón,* 448 F.3d 16, 32 (1st Cir. 2006). Such claims are limited to government action that, by its very nature, "shock[s] the conscience," *id.,* and we reserve it for "truly horrendous situations." *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 45 (1st Cir. 1992). None of the decision or actions by Mr. Purcell in condemning seafood that has been spilled out on the roadside, near a fuel spill, for four hours on a hot July morning

amount to actions that "shock the conscience."[4] Accordingly, Mr. Purcell is entitled to qualified immunity on Count X.

---

[4] Indeed, it may shock the conscience if Mr. Purcell had decided otherwise and instead ordered them to pack up all the spilled fish and lobsters and send them on their way, to the restaurants and local fish markets that would have been its ultimate destination.

*Conclusion*

For the foregoing reasons, the Defandants' Motion for Summary Judgement (Docket No. 55) is **GRANTED**.

SO ORDERED.

/s/ Timothy S. Hillman
TIMOTHY S. HILLMAN
U.S. DISTRICT JUDGE